**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **WEIDENFIELD AGWE FOMBII TICHAAWA,** | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. CIV-26-1732-PRW** |
| **MARKWAYNE MULLIN, et al.,** | ) | |
| **Respondents.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner Weidenfield Agwe Fombii Tichaawa, a noncitizen[1] and Cameroonian national proceeding with counsel, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE"). United States District Judge Patrick R. Wyrick referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). The undersigned set a briefing schedule, Doc. 5, and the Petition is at issue. For the reasons below, the undersigned recommends that the Court deny the Petition.

## I. Background

Petitioner, a citizen of Cameroon, entered the United States on or about October 4, 2011, as a nonimmigrant with authorization to remain in the United States for a temporary period not to exceed April 12, 2012. Doc. 1-1 at 1. On April 2, 2024, he was granted

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

Temporary Protected Status ("TPS"). Pet. at 5. On August 4, 2025, Petitioner's TPS status was terminated. *Id.*; *see also Notice of Termination of the Designation of Cameroon for Temporary Protected Status*, USCIS, 90 Fed. Reg. 23697 (June 4, 2025) (U.S. Citizenship and Immigration Service's Notice terminating TPS for Cameroon effective August 4, 2025). On September 11, 2024, he was charged with driving while intoxicated.[2] Pet. at 6. On September 16, 2025, Petitioner was granted a deferred adjudication on the driving charge; he was issued a $300 fine and required to complete an "educational course" and drug testing. *Id.*

On October 1, 2025, ICE arrested Petitioner in Frisco, Texas. Pet. at 6; Doc. 9-4 at 2 (Form I-213). On October 23, 2025, the Department of Homeland Security initiated removal proceedings against him by filing a Notice to Appear with the Immigration Court, charging him as removable under 8 U.S.C. § 1227(a)(1)(B) in that, after admission as a nonimmigrant, he remained in the United States longer than permitted. Doc. 1-1 at 1. Petitioner filed a motion for a bond hearing. Pet. at 6. On November 4, 2025, an Immigration Judge ("IJ") held a bond hearing and denied bond due to Petitioner's "[d]anger to the community and flight risk based on minimal 42B hardship and weak 589 claim." *Id.*; Doc. 1-2 at 16 (IJ Bond Denial Order). He did not appeal the IJ's order to the Board of Immigration Appeals ("BIA"). Resp. at 5; Reply at 2.

---

[2] The record includes no evidence of Petitioner's arrest, charge, and sentence.

On January 23, 2026, an IJ denied Petitioner's claims for relief and ordered him removed from the United States. Doc. 9-5 (IJ Removal Order). He timely appealed the IJ's removal order to the BIA. Doc. 9-6. His appeal remains pending. *See* EOIR, Automated Case Information, *at* https://acis.eoir.justice.gov/en/caseInformation (last visited Oct. 13, 2026).

On July 9, 2026, Petitioner filed his Petition before the Court. Pet. at 1. When he filed his Petition, he was detained at Diamondback Correctional Facility in Watonga, Oklahoma. *Id.* at 2. Petitioner remains detained there. *See* ICE Online Detainee Locator, *at* https://locator.ice.gov/odls/#/results (last visited Oct. 13, 2026).

## II. Petitioner's Claim

Petitioner asserts one claim in his Petition. He alleges that, because more than eight months have passed since the IJ's original bond denial and he remains in ICE detention, a new bonding hearing that places the burden on the government is warranted. Pet. at 7. He cites *Mathews v. Eldrige*, 424 U.S. 319-334-35 (1976), to argue due process mandates another bond hearing. Pet. at 7-8. Petitioner seeks release from ICE custody or a second bond hearing before a neutral decisionmaker at which the government bears the burden to justify continued detention. *Id.* at 8-9.

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through

habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. Analysis

### A. Petitioner is detained under 8 U.S.C. § 1226(a).

A noncitizen detained under 8 U.S.C. § 1226(a) is entitled to a bond hearing in which he may argue before an IJ that he should be released during removal proceedings. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outside of detention.") (citing 8 C.F.R. §§ 236.(d)(1), 1236.1(d)(1)); *see also Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1235-49 (10th Cir. 2026) ("[N]oncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a)[.]"). A noncitizen may appeal to the BIA an IJ's decision from a bond hearing. 8 C.F.R. § 236.1(d)(3). A noncitizen may also seek a custody redetermination any time if they can demonstrate their circumstances materially changed. *Id.* § 1003.19(e). It is undisputed Petitioner is detained under § 1226(a). Resp. at 2; Reply at 1.

### B. Petitioner does not have to exhaust all administrative remedies.

Petitioner did not appeal the IJ's order denying bond, and Respondents argue this failure bars him from filing the present Petition. Resp. at 4-6.[3] The record also does not

[3] To support their argument, Respondents rely exclusively on decisions outside this District and the Tenth Circuit. Doc. 9 at 4-6. Such authority is not binding on the Court.

show Petitioner sought a subsequent custody redetermination hearing based on changed circumstances, namely the prolonged period of his continued detention before filing his Petition. *See* 8 C.F.R. § 1003.19(e) ("After an initial bond redetermination, an alien's request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination."). Based on prior decisions in this District and the text of § 1226(a) and § 2241, however, Petitioner need not exhaust all available administrative remedies before filing a habeas petition before the Court.

While generally "the exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief[,] . . . the statute itself does not expressly contain such a requirement." *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) (citation modified). "Challenges to immigration detention are properly brought through habeas. And the exhaustion deficiencies [the Tenth Circuit has] noted in other respects do not affect habeas jurisdiction over such claims." *Soberanes*, 388 F.3d at 1310 (citing *Zadvydas*, 533 U.S. at 687-88). "Exhaustion is typically nonjurisdictional," and courts "treat a rule as jurisdictional only if Congress clearly states that it is." *Santos-Zacaria v. Garland*, 598 U.S. 411, 416-17 (2023) (citation modified). "When Congress has not clearly required exhaustion," making it nonjurisdictional, "sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Further, the statutory language of § 1226(a) does not expressly contain an exhaustion requirement.

Judge DeGiusti concluded in two recent habeas cases that immigration detainees do not have to exhaust administrative remedies before filing a habeas petition. *See Bangemu v. Gantt*, No. CIV-815-D, 2026 WL 2323601, at *3 (W.D. Okla. July 30, 2026) (R&R) (recommending that a petitioner not be required to exhaust administrative remedies by first appealing an IJ's order denying bond, when raising a due-process challenge to prolonged detention under § 1226(a)), *adopted*, 2026 WL 2329865 (W.D. Okla. Aug. 11, 2026); *Miranda v. Mullin*, No. CIV-26-1004-D, 2026 WL 2390961, at *1 (W.D. Okla. Aug. 17, 2026) (ruling an immigration detainee "is not required to request a bond redetermination hearing before filing his Petition"). Other judges in the circuit have also found exhaustion unnecessary for noncitizens challenging detention under § 1226(a). *See Repela v. ICE Field Off. Dir.*, No. 26-CV-00552, 2026 WL 776123, at *2 (D. Colo. Mar. 19, 2026) ("[E]ven though a noncitizen detained pursuant to § 1226 may request a bond hearing, they are not required to do so before they can pursue § 2241 habeas relief."); *Salvador F.-G. v. Noem*, No. 25-CV-0243, 2025 WL 1669356, at *6 (N.D. Okla. June 12, 2025) ("[Section] 1226 contains no clear rule that requires exhaustion of administrative remedies.").

Here, Petitioner's failure to exhaust his available administrative remedies—specifically, his failure to appeal the IJ's bond order to the BIA or to seek a subsequent custody redetermination based on changed circumstances—does not bar him from seeking habeas relief. The Court should consider the merits of the Petition.

**C. Petitioner's due process claim should be denied.**

"The Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quotation modified). Such protections apply to all noncitizens in the United States, whether their presence is "lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Due Process Clause protects." *Id*. at 690. Under these principles, civil immigration detention satisfies due process only in "certain special and narrow nonpunitive circumstances," and must "bear[] [a] reasonable relation to the purpose" for which the noncitizen is detained. *Id*. (citation modified). For example, the Supreme Court has identified such purposes to mitigate the risk of danger to the community and to prevent the noncitizen's flight. *Id*. at 690-91; *see also Demore*, 538 U.S. at 527-28. A noncitizen's detention motivated by these purposes may still violate the Due Process Clause when the detention becomes unreasonably prolonged.[4]

Here, Petitioner does not directly challenge his initial bond hearing.[5] Pet. at 2-3 ("Petitioner does not seek review of the merits of the removal proceedings or ask this Court

[4] A noncitizen may claim their detention violates either their substantive or procedural due process, though Petitioner does not specify a basis here.

[5] Petitioner nonetheless alleges the IJ should have weighed certain factors more strongly toward release at the initial bond hearing. Pet. at 7-8. Respondents argue the Court lacks jurisdiction to consider an IJ's discretionary findings. Resp. at 6-7. This Court "has no jurisdiction to consider a habeas petitioner's challenge to the decision to either grant or

to reweigh the [IJ's] discretionary bond determination. Rather, he challenges the legal and constitutional adequacy of the procedures governing his continued detention."); Reply at 3-4. Petitioner alleges though he has received a bond hearing, he has now been detained for such a period that Respondents' failure to provide an *additional* bond hearing—where the government bears the burden to justify his continuing detention—violates his due process rights under *Mathews*. Pet. at 7-8.

Courts considering habeas petitions have often applied the *Mathews* framework to determine what constitutional process is required in immigration detention cases. This framework requires a court to analyze an individual's due process claim "in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State," and "the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). *See also, e.g., Requejo Roman v. Castro*, 816 F. Supp. 3d 1267, 1282 (D.N.M. 2026) ("In determining what procedures sufficiently protect due process in the immigration context, courts have applied the framework established in [*Mathews*]."); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28-39 (1st Cir. 2021) (applying *Mathews* to determine whether a noncitizen detained under § 1226(a) is entitled to a bond hearing where the government bears the burden of proof).

---

deny bond." *Kumar v. De Anda-Ybarra*, No. CIV-26-164-R, 2026 WL 753944, at *2 (W.D. Okla. Mar. 17, 2026); *see also* 8 U.S.C. § 1226(e).

The undersigned adopts the thoughtful reasoning of Judge Maxfield's Report and Recommendation in *Bangemu* and similarly analyzes Petitioner's due process claim under the three *Mathews* factors. *See Bangemu*, 2026 WL 2323601, at *4-*7 (R&R) (applying *Mathews* to analyze a due-process challenge to prolonged detention under § 1226(a) after an initial bond hearing), *adopted*, 2026 WL 2329865 (W.D. Okla. Aug. 11, 2026). In *Bangemu*, Judge DeGiusti adopted Judge Maxfield's recommendation to deny a petition for a similarly situated petitioner who (1) had a prior bond hearing under § 1226(a) at the which the IJ denied bond and (2) filed a habeas petition, six months after the bond hearing, alleging due process entitled him to another bond hearing based on his prolonged detention. 2026 WL 2329865, at *1. After applying the *Mathews* factors in a similar way to Petitioner's claim, the undersigned recommends denial of the Petition.

**1. Petitioner's private liberty interest weighs in his favor.**

The first *Mathews* factor is "the private interest that will be affected." 424 U.S. at 335. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690; *see id*. ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem."). Indeed, "in our society liberty is the norm, and detention . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987) (citation modified). This liberty interest also applies to noncitizens, as "a statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas*, 533 U.S. at 690 (citation modified).

Respondents deprived Petitioner here of his freedom when they detained him under § 1226(a) after the bond hearing. Put differently, while he remains in detention, his private interest in being free from imprisonment is at stake. The undersigned finds the first *Mathews* factor favors procedures that carefully protect Petitioner's liberty interest. *See Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1243 (D.N.M. 2025) ("This Court need not wait another six, twelve, or eighteen months to determine that the first *Mathews* factor weighs in Petitioner's favor. Petitioner's private interest in being free from detention – and unlawful detention at that – is at stake now."); *Requejo Roman*, 816 F. Supp. 3d at 1283 (finding the first *Mathews* factor favored a petitioner in ICE custody because his interest in being free from detention is 'the most elemental of liberty interests'") (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).

**2. There is little or no risk of an erroneous deprivation of Petitioner's due process rights due to constitutionally sufficient procedures.**

The second *Mathews* factor is "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335. In *Jennings*, the Supreme Court held § 1226(a) does not confer a statutory right to periodic bond hearings, and the canon of constitutional avoidance did not provide a basis for reading such a right into the statute. 583 U.S. at 297-303. The Court, though, ultimately left unresolved the constitutional question whether periodic bond hearings may be warranted under due process. *Id.* at 312-13.

Here, Petitioner's central claim—that detention under § 1226(a) has become so prolonged that due process requires an *additional* bond hearing—has divided courts of appeals. The First and Second Circuits answered that question in the affirmative on the records before them. *See Hernandez-Lara*, 10 F.4th at 30, 39-41 (holding § 1226(a) procedures invalid as applied to a noncitizen detained for ten months who had received a bond hearing one month into detention, and ordering a new hearing at which the government bore the burden to justify continued detention); *Velasco Lopez v. Decker*, 978 F.3d 842, 853-56 (2d Cir. 2020) (holding once § 1226(a) detention becomes "prolonged," a detainee is entitled to a new hearing at which the government bears the burden to justify continued detention). [6]

The Third and Ninth Circuits have rejected claims that prolonged detention under § 1226(a) entitles a petitioner to a second bond hearing as a matter of due process, while expressly reserving the possibility of relief upon a different record. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279-80 (3d Cir. 2018) (rejecting a detainee's claim "to compel a second bond hearing despite alleging no constitutional defect in the one he received," while recognizing "despite an initial bond hearing, detention under § 1226(a) might become unreasonably prolonged, whether by virtue of government delay or some

---

[6] Additional circumstances in *Velasco Lopez* warrant acknowledgment. The noncitizen's prolonged detention there was largely attributable to ICE delays to produce the detainee for his criminal proceedings. 978 F.3d at 852–53. Bond was then denied based on the very charges that ICE's own conduct had kept pending. *Id.* The risk of erroneous deprivation in that case was not theoretical; it was demonstrated on the record.

other cause," and declining to "decide when, if ever, the Due Process Clause might entitle an alien detained under § 1226(a) to a new bond hearing"); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203, 1213-14 (9th Cir. 2022) (holding the Due Process Clause does not entitle a detainee to "a second bond hearing at which the government bears the burden of proof," but declining to "foreclose all as-applied challenges to § 1226(a)'s procedures").

No court, though, has ruled that prolonged detention alone entitles a detainee to another bond hearing. *See, e.g.*, *Borbot*, 906 F.3d at 277 ("But Borbot cites no authority, and we can find none, to suggest that duration alone can sustain a due process challenge by a detainee who has been afforded the process contemplated by § 1226(a) and its implementing regulations."); *Velasco Lopez*, 978 F.3d at 855 n.13 (declining "to establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden"); *Hernandez-Lara*, 10 F.4th at 30 n.4 (declining to determine when detention becomes sufficiently prolonged to require another hearing).

Petitioner stands in a position akin to the noncitizen in *Borbot*. He does not contend the IJ applied an incorrect standard or the initial bond hearing had any constitutional defects. He identifies no defect in the procedures used during the hearing, and the record evidence does not establish a risk of erroneous deprivation when the IJ denied Petitioner bond. Petitioner also fails to show additional procedures would diminish the risk of an erroneous deprivation of his due process rights. He emphasizes only an additional hearing where the government holds the burden of proof conforms with procedural due process. Reply at 6. But regulations already provide additional procedures, as they allow a

noncitizen to appeal an adverse bond decision and to request a custody redetermination upon showing materially changed circumstances. 8 C.F.R. §§ 236.1(d)(3), 1003.19(e). Petitioner has received a constitutionally sufficient bond hearing, he has additional procedures available to appeal and to seek a second hearing, and he fails to cite any legal authority to support his position. The second *Mathews* factor weighs against him.[7]

3. **The government's interest and administrative burden are substantial.**

The final *Mathews* factor is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. Respondents have no legitimate interest "in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight." *Velasco Lopez*, 978 F.3d at 854; *see also Demore*, 538 U.S. at 515 (noting the government has an interest in "protecting the public from dangerous criminal aliens."). Indeed, through detention, the government seeks to increase the chance that, if ordered removed, the noncitizens will be successfully removed. *Rodriguez Diaz*, 53 F.4th at 1208 (citing *Demore*, 538 U.S. at 528). Also, while the administrative burden of an additional hearing is "minimal," *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 943 (D.

[7] In *Velasco Lopez*, the Second Circuit was concerned that the noncitizen proceeding pro so could not easily access information the government had. 978 F.3d at 852–53. As a result, there would be an erroneous deprivation of the noncitizen's rights such that the second *Mathews* factor weighed in his favor. *Id.* Here, Petitioner is represented by counsel, and this consideration does not apply.

Colo. 2025), the Court must still consider whether additional procedure would meaningfully reduce the risk of an erroneous deprivation.

The undersigned concludes the government's interest in detaining Petitioner until removal is substantial. An IJ found Petitioner failed to show he was not a danger to the community and a flight risk. Doc. 1-2 at 3. The IJ provided a basis for this determination after a "full consideration of the evidence," finding Petitioner had minimal hardship and a weak claim for relief. *Id.* Further, he has not adequately explained how additional procedures would meaningfully reduce the risk of error when an IJ has already reviewed the record evidence to determine whether he is a flight risk or danger to the community and determined he is. Instead, Petitioner's requested relief is a second bond hearing with the burden on the government. However, for reasons discussed above, the procedures guaranteed by the regulations already seek to prevent any erroneous deprivation. Further, though not administratively final, Petitioner was ordered removed, Doc. 9-5, and the government has a substantial interest in ensuring noncitizens who are ordered removed are actually removed. The third factor weights in Respondents' favor.

### 4. Conclusion

In sum, the first *Mathews* factor favors Petitioner, and the second and third factors favor Respondents. Petitioner received a timely and constitutionally sufficient bond hearing that he does not challenge. Because no court has adopted an explicit rule that requires a second or periodic bond hearing based solely on the length of detention, and

Petitioner does not identify any meaningful inadequacies in his earlier bond hearing or relevant regulations, the Court should reject Petitioner's claim on the merits.

## V. Recommendation and Notice of Right to Object

For these reasons, the undersigned recommends that the Court **DENY** the Petition, Doc. 1, for habeas relief. The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **October 27, 2026.** *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **November 3, 2026.** *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 13th day of October, 2026.

Chris M. Stephens
______________________________
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE